IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.    21-cr-00143-RM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**FRANCISCO GARCIA,**

        Defendant.

---

**MR. FRANCISCO GARCIA'S MOTION TO ADDRESS THE TOPIC OF
IMPLICIT BIAS DURING VOIR DIRE**

---

Mr. Francisco Garcia, by and through undersigned counsel, hereby moves the Court for permission to address the topic of implicit bias during jury selection. Specifically, Mr. Garcia requests that the Court use the following procedures during *voir dire*: (1) administer a case-specific jury questionnaire that includes questions related to implicit bias; (2) show two brief videos explaining implicit bias to the venire; and (3) give a preliminary instruction on implicit bias. As set forth more fully below, the requested relief is necessary in order to minimize the impact of implicit bias and ensure that Mr. Garcia receives a fair trial.  The government objects to the issuance of the questionnaire, does not oppose the preliminary instruction to the jury, and does not take a position on the use of the requested videos at this time.

**I.    There Is A Significant Risk That Implicit Bias Will Have A Negative Impact On The Fairness Of Mr. Garcia's Trial**

Implicit bias, also known as stereotyping, refers to "the unconscious assumptions that humans make about individuals." *United States v. Mateo-Medina*, 845 F.3d 546, 553 (3d Cir.

1

2017). While implicit bias may play a particularly large role in situations requiring "rapid decision-making, such as police encounters," *id.*, it can also affect longer term decision-making, like the decisions made by jurors. In one study of mock jurors, a defendant's skin color "altered how jurors evaluated the evidence presented and also how they answered the crucial question 'How guilty is the defendant?'" In particular, darker-skinned defendants were judged to be more guilty than lighter-skinned defendants. *See Implicit Bias in the Courtroom*, Kang, Jerry, et. al; 59 UCLA L. Rev. 1124, 1144-45 (2012). Implicit bias also "causes judges and jurors to unknowingly misremember case facts in racially biased ways." The Hon. Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, The Failed Promise of* Batson*, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 157 (2010).

The main danger with implicit bias is that individuals are unaware of its presence: people "unconsciously act on such biases even though [they] may consciously abhor them." Bennett, 4 Harv. L. & Pol'y Rev. at 149. These stereotypes lie "deep within our subconscious." *Id.* For example, in the aforementioned study many of the same mock jurors who found the darker-skinned defendants to be guiltier than the lighter-skinned defendants could not even recall the defendant's race. *See* Kang, 59 UCLA L. Rev. at 1145. Moreover, there was no correlation between the mock jurors' levels of explicit racial bias and their weighing of the evidence or assessment of guilt. *See id.*; *see also* Justin D. Levinson, *Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering*, 57 Duke L.J. 345, 398 (2007) (finding that test subjects "misremembered certain legally relevant facts in a racially biased manner," and in particular tended to make memory errors "in a manner harmful to Blacks").

The risk that these implicit biases will have a negative impact on the fairness of this trial is heightened by three factors. First, Mr. Garcia is a Latino man and may testify at the trial.

Second, Mr. Garcia anticipates calling witnesses in his defense who are also Latino. The credibility of Mr. Garcia and the defense witnesses will be an important issue for the jurors to evaluate. Third, the risk that implicit bias will play a role in Mr. Garcia's trial is actually *increased* by the fact that his case is not explicitly racially charged. Research suggests that, "[w]hen the case is racially charged, jurors—who want to be fair—respond by being more careful and thoughtful about race and their own assumptions," whereas "when the case is not racially charged, even though there is a Black defendant and a White victim, jurors are not especially vigilant about the possibility of racial bias influencing their decision-making." Kang, 59 UCLA L. Rev. at 1143. Unless measures are taken to combat implicit bias, there is a significant risk that the trial will be driven, at least in part, by these unconscious, and unfair, thought-processes.

## II.   This Court Can and Should Take Steps To Limit The Impact Of Implicit Bias

Importantly, there are strategies for limiting the negative impact of implicit bias and promoting impartial decision-making. Individuals with inflated senses of their own objectivity, for example, seem to be at particular risk for behaving in biased ways. *See* Kang, 59 UCLA L. Rev. at 1172-73. Learning about the possible influence of unconscious thought processes on decision-making, on the other hand, may actually lead people to be *more* objective. *See id.* at 1173. Similarly, research suggests that individuals who are consciously motivated to counteract their implicit biases make more objective decisions. *See id.* at 1174-75. In combination, these factors may explain why, for instance, judges seem to be able to engage in more objective decision-making than laypeople, even when they harbor the same kinds of implicit bias as the general population. *See* Bennett, 4 Harv. L. & Pol'y Rev. at 156-57 ("given significant motivation, judges can compensate for the influence of these biases.") (citation omitted).

"A probing *voir dire* examination is the best way to ensure that jurors do not harbor biases for or against the parties." *Sampson v. United States*, 724 F.3d 150, 163-64 (1st Cir. 2013) (citation omitted). And increasingly, state and federal courts across the country have adopted *voir dire* procedures intended to counteract the negative impacts of implicit bias by educating jurors and increasing their motivation to evaluate the evidence objectively, free from implicit bias. *See, e.g.*, *Unconscious Bias*, United States District Court for the Western District of Washington, http://www.wawd.uscourts.gov/jury/unconscious-bias (last visited March 17, 2022) (video and jury instructions created by a committee of judges and attorneys to be presented to jurors "highlighting and combating the problems presented by unconscious bias"). Accordingly, Mr. Garcia requests that the Court exercise its broad discretion over matters related to jury selection in order to limit the impact of implicit bias on the trial by instituting the following procedures at trial:

### A.     Case-Specific Jury Questionnaire

Mr. Garcia requests that the Court order the use of a case-specific jury questionnaire. *See* Exhibit A (Proposed Jury Questionnaire). This is a prison case in which the defendant, Mr. Garcia, is Latino and witnesses expected to testify on his behalf are Latino. And as previously discussed, the risk that implicit bias will have an impact on jurors' assessment of the evidence in this case is actually exacerbated by the fact that it is not otherwise racially charged.

Under these circumstances, a case-specific jury questionnaire is an appropriate tool to enable the selection of a fair and impartial jury. The case-specific jury questionnaire is particularly valuable in this case because it may be completed in private. Racial prejudice and implicit bias are sensitive subjects, and prospective jurors are likely to be more forthcoming in

writing. The completed jury questionnaires will enable counsel to use their time with the jury to question the jurors more efficiently.

Accordingly, Mr. Garcia requests that this Court grant his request to use a case-specific jury questionnaire.

**B.      Orientation Video Explaining Implicit Bias**

Mr. Garcia also requests that the Court play two videos: 1) "Unconscious Bias," a video produced by the United States District Court for the Western District of Washington on the subject of unconscious or implicit bias and shown to all potential jurors during orientation and 2) a clip from the hidden camera show "What Would You Do?", which aired on ABC in 2010. *See Unconscious Bias*, United States District Court for the Western District of Washington ("Washington Video") (Exhibit B); *see also* video of "What Would You Do?" *(*found at https://www.youtube.com/watch?v=ge7i60GuNRg (Exhibit C).[1]  The first video, which is 10:53 minutes long, was "created by a committee of judges and attorneys" in the Western District of Washington, and "presented to jurors in every case with the intent of highlighting and combating problems presented by unconscious bias." *Id.*  The second video contains an example of implicit bias that was uncovered as part of a hidden camera show.

Together, these videos provide viewers with a brief but thorough education on the subject of implicit bias—and strategies for combating it. As previously discussed, research suggests that educating individuals about implicit bias can help reduce its impact, both by encouraging them to question their own objectivity, and by increasing their motivation to make fair decisions. *See* Kang, 59 UCLA L. Rev. at 1172-77. The Washington Video works on both of these fronts,

---

[1] Both exhibits are contained on a single compact disk. The disk is filed conventionally with the Clerk's Office and a copy will be delivered to chambers.

simultaneously raising juror awareness of the potential pitfalls of unconscious bias and encouraging jurors to combat any such bias within themselves by carefully reflecting on their decisions. The video is measured in tone, rather than accusatory, and grounded in evidence-based, scientific terms - both factors that are likely to increase its efficacy in reducing implicit bias and increasing juror fairness. *See id.* at 1183.  The second video demonstrates implicit bias in a real world setting and demonstrates how shocking of a phenomena it can be when implicit biases infect the decision-making process of average citizens.

Accordingly, Mr. Garcia requests that this Court play both videos to potential jurors during orientation.

**C.     Preliminary Instruction on Implicit Bias**

Mr. Garcia further requests that this Court issue the following preliminary instruction to the entire panel of potential jurors, prior to *voir dire*, which is based upon the model instruction used in the Western District of Washington:

> It is important that you discharge your duties without discrimination, meaning that bias regarding the race, color, religious beliefs, national origin, sexual orientation, gender identity, or gender of the defendant, any witnesses, and the lawyers should play no part in the exercise of your judgment throughout the trial.
>
> Accordingly, during this voir dire and selection process, you may be asked questions related to the issues of bias and unconscious bias.

*Cf.* Preliminary Instruction To Be Given To The Entire Panel Before Jury Selection, Western District of Washington, http://www.wawd.uscourts.gov/sites/wawd/files/CriminalJuryInstructions-ImplicitBias.pdf.

In addition to setting the stage for *voir dire*, the proposed preliminary instruction "alert[s] the jury to the concept of unconscious bias" and instructs them "in a straightforward way not to use bias, including unconscious bias, in its evaluation of information and credibility and in its

6

y

decision-making." *Id.* In these ways, the proposed preliminary instruction helps to ensure that jurors are educated about implicit bias. As previously discussed, education helps to ensure that potential jurors are both "skeptical about their own objectivity" and "motivated to check against implicit bias," and thus more likely to make objective decisions. 59 UCLA L. Rev. at 1181.

Accordingly, Mr. Garcia requests that this Court read the proposed preliminary instruction to the entire panel prior to *voir dire*.

### D. Consultation

Undersigned counsel consulted with government counsel about the present motion. The government objects to the issuance of a questionnaire, does not object to the proposed preliminary instruction, and does not take a position on the use of the aforementioned videos at this time.

### III.   Conclusion

For the foregoing reasons, Mr. Garcia respectfully requests that this motion be granted and that this Court order the requested relief.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/*Timothy P. O'Hara*
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
timothy.ohara@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2022, I electronically filed the foregoing **Mr. Garcia's Motion to Address the Topic of Implicit Bias During Voir Dire** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Laura Cramer-Babycz – Laura.Cramer-Babycz@usdoj.gov
Assistant United States Attorney

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Mr. Francisco Garcia (via Mail)

s/*Timothy P. O'Hara*
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Timothy_OHara@fd.org
Attorney for Defendant