IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-CR-00143-RM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**FRANCISCO GARCIA,**

      **Defendant.**

_____

**MOTION TO PRODUCE *GIGLIO* MATERIAL**
_____

      MR. FRANCISCO GARCIA, through attorney Timothy P. O'Hara, moves this Court to compel the government to disclose material under *Giglio v. United States*, 405 U.S. 150 (1972), **by April 8, 2022**. The government opposes the present motion.

**Relevant Factual Background**

      1) On April 22, 2021, the government filed a one-count Indictment against Mr. Garcia, alleging a violation of 18 U.S.C. §113(a)(6), assault resulting in serious bodily injury, on September 2, 2019. *See* Doc. 1. The alleged crime occurred at the United States Penitentiary (USP) in Florence, Colorado. Mr. Garcia and the alleged victim were inmates at the facility at the time of offense.

      2) On June 1, 2021, Mr. Garcia was arrested and appeared before the Honorable Magistrate Judge S. Kato Crews for an Initial Appearance. *See* Docs. 4 & 5.

      3) On June 3, 2021, the parties completed the Discovery Conference Memorandum and Order and submitted it to the Court. *See* Doc. 10. Magistrate Judge Crews entered the Memorandum as an Order. *See id.* In the Order, the parties noted:

> The defendant requests disclosure of evidence favorable to the defendant on the issue of guilt and/or sentencing. The government states it will disclose material evidence which is favorable to the defendant as required by *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and *United States v. Bagley*, 473 U.S. 667 (1985). **The government acknowledges its continuing duty to make these disclosures.** This request does not foreclose the defendant from filing a more specific motion requesting exculpatory evidence.

*See id.* at p. 4 (emphasis added).

4) To date, no information pertaining to potential impeachment[1] has been disclosed by the government as part of the discovery obligations regarding the witnesses that the government intends to call at Mr. Garcia's trial.

**The Importance of this *Giglio* Evidence**

The Due Process Clause requires the government to disclose information favorable to the accused that is material to either guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *Giglio v. United States*, the Supreme Court extended the rule expressed in *Brady* to include evidence useful to the defendant to impeach the government's witnesses. *See* 405 U.S. 150, 153-155 (1972). In this analysis, "no distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest.'" *Douglas v. Workman*, 560 F.3d 1156, 1172-73 (10th Cir. 2009) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). This type of evidence must be disclosed by the prosecution to the defense. The question becomes *when* such a disclosure should be required.

Even though no date or time period is specified in the Discovery Conference

---

[1] The government has disclosed witness statements of multiple, potential witnesses, including the alleged victim.

Memorandum nor in the Rules of Criminal Procedure, last minute *Brady* and *Giglio* disclosures contradict the concept of due process and therefore discouraged. Specifically, it would "eviscerate the purpose of the *Brady* rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial." See *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (citation omitted). The Tenth Circuit's disfavor of disclosures during trial can be extended to include disclosures shortly before trial:

> [i]t is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on. To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.

*Id.* And delay to gain a strategic advantage should be discouraged:

> [i]f a defendant could never make out a *Brady* violation on the basis of the effect of delay on his trial preparation and strategy, this would create dangerous incentives for prosecutors to withhold impeachment or exculpatory information until after the defense has committed itself to a particular strategy during opening statements or until it is too late for the defense to effectively use the disclosed information.

*Id.* The district court can impose a wide variety of sanctions if the government was determined to be dilatory in its disclosure obligations, including the exclusion of the witness, limitations on permitted testimony, instructions to the jury, or mistrial. See *id.*

Requiring that the government disclose *Giglio* material one month before trial is reasonable and consistent with due process. This deadline will allow the defense to not only effectively prepare for the examinations of the government's witnesses, but also to conduct any necessary investigation learned from the disclosure. Preparing for trial is a massive undertaking and adding additional investigation and work at the last minute,

3

when the information could have been disclosed earlier, would be unfair.

At Mr. Garcia's upcoming trial, the government intends to call the alleged victim as a key witness in its case-in-chief. In addition, the government likely will call correctional officers. To truly confront the government's witnesses, impeachment material in the government's possession (*Giglio* material) should be tendered one month in advance so the import of the information may be explored.

### Government's Discovery Obligations Extend Beyond Information in its Actual Possession

Another reason to require disclosure before trial is that crucial *Giglio* information may be held in the hands of a related agency, like the Bureau of Prisons (BOP) or a different division of the U.S. Attorney's Office. Since the government likely will present testimony of former BOP employees as witnesses as well as testimony from an individual formerly prosecuted by their own office whom was serving a sentence at the time of the alleged offense, a *Giglio* response from the BOP and the prosecuting division of the U.S. Attorney's Office will be required. This will require time for the information to be obtained, reviewed, and transmitted to the defense.

As of two weeks ago, in a different criminal case stemming from the same facility at the BOP, undersigned counsel learned that the policy of both the Department of Justice (DOJ) and the U.S. Attorney's Office for the District of Colorado was to request *Giglio* material no sooner than three weeks before a jury trial. *See United States v. Crews* – 19-cr-00222-REB in the District of Colorado (Doc. 129 at p. 1) (government filing noting that the government's request for *Giglio* material three weeks before the onset of trial followed the policy of both the DOJ and the U.S. Attorney's Office in the District of Colorado).

Adhering to a policy of this type inevitably will lead to a flurry of last-minute litigation in a large number of trials.[2]

The government's obligations under *Brady* and *Giglio* should be read broadly to encourage prosecutors to carry out their "duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *United States v. Kyles*, 514 U.S. at 437-38, 115 S.Ct. 1555) (emphasis added by Tenth Circuit). Information possessed "by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case." *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999). The Department of Justice affirmed this duty, calling the burden to gather and review discoverable information a "search duty." *See* the Criminal Resource Manual, *Department of Justice Guidance for Prosecutors Regarding Criminal Discovery*, § 165 (found at https://www.justice.gov/archives/jm/criminal-resource-manual-165-guidance-prosecutors-regarding-criminal-discovery) (last visited March 17, 2022). The manual defines the prosecution team to "include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." Per the manual, prosecutors are encouraged to "err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes." *Id.* According to the government's own best practices, "carefully

---

[2] For more information about the specific *Giglio* issues in *United States v. Crews*, the Court can consult the relevant CM/ECF entries following Doc. 129. Because those filings were filed under restriction, information from those filings is not reproduced here.

considered efforts to locate discoverable information are more likely to avoid future litigation over *Brady* and *Giglio* issues and avoid surprises at trial." *Id.*

Several courts have held this duty is elevated when it involves government agencies closely aligned with the prosecution and may include a "duty to search" files maintained by those agencies. *United States v. Brooks,* 966 F.2d 1500 (D.C. 1992); *see also United States ex rel. Fairman,* 769 F.2d 386, 391 (7th Cir. 1985). The Tenth Circuit cited *Brooks* with approval for the proposition that the government should be incentivized to learn of any favorable evidence known to those individuals acting on the government's behalf.  *See United States v. Combs,* 267 F.3d at 1175.

**Consultation with the Government**

Undersigned counsel advised government counsel and the government objects to a required disclosure date of April 8, 2022.  Government counsel also informed undersigned counsel that she has already submitted a *Giglio* request in the present case.

WHEREFORE, undersigned counsel requests that the Court impose a deadline of April 8, 2022, for the government to disclose *Giglio* material to the defense.

        Respectfully submitted,

        VIRGINIA L. GRADY
        Federal Public Defender

        s/ *Timothy P. O'Hara*
        Timothy P. O'Hara
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        Timothy_ohara@fd.org
        Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on March 18, 2022, I electronically filed the foregoing:

**MOTION TO PRODUCE *GIGLIO* MATERIAL**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

    Laura Cramer-Babycz
    Assistant U.S. Attorney

and I certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Francisco Garcia (U.S. Mail)

    s/ *Timothy P. O'Hara*
    Timothy P. O'Hara
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Timothy_ohara@fd.org
    Attorney for Defendant