```
                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-143-RM

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

FRANCISCO GARCIA,

       Defendant.
_____
```

**REPORTER'S TRANSCRIPT**
HEARING
_____

Proceedings before the HONORABLE RAYMOND MOORE, Judge, United States District Court for the District of Colorado, occurring at 12:24 p.m., on the 5th day of April, 2022, in Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

Andrea Surratt and Laura Cramer-Babycz, Assistant U.S. Attorneys, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

Matthew Belcher, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the Defendant.

TAMMY HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**P R O C E E D I N G S**

(In open court at 12:24 p.m.)

*THE COURT:* All right. So we're here in court on what I will call an impromptu session. There were some things that I had done yesterday, in the afternoon, by email. I notified counsel that they could come and take a look. They're here, taking a look, this afternoon, at 1 o'clock.

What it is I had done is I had skirts placed around each of the tables in the well of the courtroom, made out of a black fabric material, and each of the four tables in here has such a skirt. What led to this is simply the following, on a prior occasion, I had been conferenced with the Marshals, including the U.S. Marshal, and security concerns were brought to my attention regarding this case. Those were concerns shared and honestly held by the U.S. Marshals.

After that conversation, I made decisions that I previously announced to the parties as to how witnesses would be brought -- BOP witnesses would be brought into the courtroom; that they would wear leg irons or leg restraints during testimony; and that I would require some movement of Mr. Garcia and positioning during the testimony of those BOP witnesses to deal with some of the the concerns.

Yesterday afternoon, I had a second conference with the Marshals' representatives, because their concerns had not gone away, but had increased, due to information that they were

1   receiving from the Bureau of Prisons, SIS and other staff;
2   although I don't have the identification of such individuals.
3           The concerns, obviously, is that there could be some
4   disruptions and/or security concern or violence during the
5   course of the trial, separate and apart from the concern as
6   held by the Marshals.  I would be blind if I were to say that
7   that is not a possibility here.  What I mean by that is, the
8   nature of the case is an assault on one inmate on another,
9   resulting in serious bodily injury.  And I have seen some of
10  the exhibits, which tend to show that the end product of the
11  alleged assault was serious damage to the body of Mr. Cardenas,
12  who will testify as the victim in this case.
13          If you move from that to the players in the case, what
14  we have are, one person, Mr. Cardenas, who is a former leader
15  of the Gulf Cartel; two of the witnesses, who are alleged to
16  have extorted Mr. Cardenas are members of the Mexican Mafia.
17  The defendant is a Surenos gang member, who are, in some ways
18  affiliated with the Mexican Mafia.  If you step away from that
19  and you look to the individualized records of the person as
20  involved, Mr. Garcia has a -- it's not clear to me, he was 17
21  years old at the time, but may have been prosecuted as an
22  adult, an assault conviction.  He also has a drug conviction,
23  with a, I believe, a 924(c), and a felon with a gun charge.
24          Mr. Cardenas is -- has a conviction for conspiracy to
25  possess with intent to distribute drugs, conspiracy to money

1 launder and three counts of threatening to murder a federal
2 official.
3 Mr. Santiago is doing a life sentence for murder of an
4 inmate. That sentence came out of this District, and I
5 mentioned it to counsel before, it was in front of Judge
6 Blackburn.
7 The remaining BOP witnesses, Mr. Perez, and my
8 understanding, based on my review of criminal records, is that
9 he has a conviction for killing or aiding and abetting the
10 killing of an individual in connection with a CCE.
11 So, every way I look at this, I have to take,
12 seriously, the security concerns, to give myself options, and
13 to give the Marshals options.
14 I have designated one table in the courtroom as
15 theirs, under which, hidden by the skirt, they can keep ready
16 access to what equipment, restraints or tools they need to
17 respond to an emergency.
18 I have put up a skirt around Mr. Garcia's table, not
19 because he is going to be restrained, but to give me the
20 opportunity, in the event further intelligence or events
21 occurring at the trial elevate the concerns, in my mind, to
22 where I feel it is necessary to have him be restrained for all
23 or part of the trial, whether that be leg irons or more severe
24 restraints, that it not be visible to the jury, and, of course,
25 I don't want to have a skirt mysteriously appear around the

1    table in the -- for the first time in the middle of the trial.

2           Having now had the defense side skirted, guess what?
3    I needed to skirt the government's side, as well, so that all
4    of the tables look exactly the same, and that's what I have
5    done; that's the reason I have done it.

6           I will note that I had sent an email to the government
7    asking for the records of the -- criminal records of the people
8    involved.  At the time that was not -- what I have just put on
9    the record today, is not the reason I asked for it.  I asked
10   for it simply to be advised, because I knew that there were
11   moving parts in this case, and I wanted to be better informed,
12   but like glove in hand, that information meshes with the
13   security concerns and we are where we are.

14          So, I'm not asking for anyone to do anything now.  I
15   just wanted to put, on the record, why I have done what I have
16   done, and if counsel wants to take the matter up further, we
17   can do that on Monday morning.  If counsel wants to say
18   anything now, they can say anything now.

19          I should say that Ms. Cramer-Babycz, Ms. Surratt and
20   Mr. Belcher are all here, and the government also has one of
21   their IT people slash paralegals slash -- I don't really know
22   her title or name -- appearing, as well, and they have now been
23   afforded an opportunity to observe the courtroom.

24          Government, anything?

25          *MS. CRAMER-BABYCZ:*  Nothing from the government.

1  Thank you, Your Honor.

2          *THE COURT:*  Mr. Belcher, anything?

3          *MR. BELCHER:*  No, Your Honor.

4          *THE COURT:*  All right.

5      (Recess at 12:31 p.m.)

6                     REPORTER'S CERTIFICATE

7

8      I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
9

10      Dated at Denver, Colorado, this 6th day of January, 2023.

11                       s/Tammy Hoffschildt

12                       _____
                         Tammy Hoffschildt, FCRR,RMR,CRR
13