IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-143-RM

UNITED STATES OF AMERICA,

　　　Plaintiff,

vs.

FRANCISCO GARCIA,

　　　Defendant.
_____

**REPORTER'S TRANSCRIPT**
HEARING
_____

　　　Proceedings before the HONORABLE RAYMOND MOORE, Judge,

United States District Court for the District of Colorado,

occurring at 10 a.m., on the 9th day of May, 2022, in Courtroom

A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

　　　Andrea Surratt and Laura Cramer-Babycz, Assistant U.S.

Attorneys, 1225 17th Street, Suite 700, Denver, Colorado,

80202, appearing for the Government.

　　　Timothy O'Hara, Assistant Federal Public Defender, 633

17th Street, 10th Floor, Denver, Colorado, 80202, appearing for

the Defendant.


TAMMY HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1  **P R O C E E D I N G S**

2      (In open court at 10:04 a.m.)

3          *THE COURT:*  Please be seated.  All right.  We're here

4  for a Change of Plea in 21-cr-143, United States versus

5  Francisco Garcia.

6          Let me take appearances, starting with the government.

7          *MS. CRAMER-BABYCZ:*  Good morning, Your Honor.

8  Laura Cramer-Babycz and Andrea Surratt, on behalf of the United

9  States.

10          *THE COURT:*  Good morning to both of you.

11          *MR. O'HARA:*  Good morning, Your Honor.

12  Timothy O'Hara, here on behalf of Mr. Garcia.  He is seated to

13  my left.  He is in custody.

14          *THE COURT:*  Good morning to you, as well as to him.

15          Before we proceed, let me ask one question, and that

16  has to do with how I want to move bodies around, here, today.

17  Normally, I send people to the podium for a Change of Plea.  If

18  he is wearing leg irons or leg restraints -- he is not.  Okay.

19  Then, would you and your client please go to the podium?

20          All right.  Mr. Garcia, before we can proceed, you

21  have to take an oath to tell the truth.  What I would ask that

22  you do is face my courtroom deputy, raise your right hand, she

23  will give you that oath.

24      (**FRANCISCO GARCIA** was sworn.)

25          *THE DEFENDANT:*  Yes.

1          THE COURT:  All right.

2          THE COURT:  Mr. O'Hara, if you would tip that mic in

3     towards him a little bit -- there you go.

4          Mr. Garcia, you are now under oath, and what that

5     means is that you are required to answer my questions

6     truthfully, today.  If you were to knowingly answer a question

7     falsely, which is probably the most convoluted way possible of

8     saying if you were to lie, the answer could be used against you

9     to charge you with additional crimes above and beyond anything

10    that you are already facing.

11         The crimes might be titled perjury or making a false

12    statement; the nature the charge is not critical, it's just

13    simply that it could occur.  Do you understand?

14         THE DEFENDANT:  Yes.

15         THE COURT:  So, I'm not interested in having a

16    misunderstanding occur either by you or by anyone else.  What I

17    do is I give you this instruction, which I give to everyone,

18    if, at any time today, you are not sure what I'm saying or what

19    I mean, and it doesn't matter why, whether you didn't hear it

20    or you heard it, but you are not quite sure, you let me know

21    and I will clear it up.  Okay?

22         THE DEFENDANT:  All right.

23         THE COURT:  All right.  What is your full name?

24         THE DEFENDANT:  Francisco Garcia.

25         THE COURT:  How old are you, sir?

1          *THE DEFENDANT:*  Thirty-seven.

2          *THE COURT:*  How far did you go in school?

3          *THE DEFENDANT:*  I got my G.E.D.

4          *THE COURT:*  Can you read?

5          *THE DEFENDANT:*  Yes.

6          *THE COURT:*  Since the time that you were -- well, you

7   were in custody when this offense happened.  From the time that

8   this offense occurred, while in custody of the Bureau of

9   Prisons, have they been treating you for any form of mental

10  illness or addiction to narcotic drugs of any kind?

11         *THE DEFENDANT:*  No.

12         *THE COURT:*  Are you currently taking or under the

13  influence of any type of drug or medicine or alcoholic

14  beverage?

15         *THE DEFENDANT:*  No.

16         *THE COURT:*  Are you able to think clearly and make

17  intelligent decisions, here, today?

18         *THE DEFENDANT:*  Yes.

19         *THE COURT:*  All right.  Mr. O'Hara, if you would help

20  out here, there's a document that's been filed in this case,

21  that's called the Indictment.  The Indictment being, simply,

22  the formal written charges that have been filed against you.  I

23  take it that you have a copy there, at the podium?

24         *THE DEFENDANT:*  Were you asking me?

25         *THE COURT:*  Yes.

1            *THE DEFENDANT:*  Yes.

2            *THE COURT:*  You are right; I flip-flopped between

3   Mr. O'Hara.

4            The reason I came back to you, is normally, when I say

5   something he is quite responsive, and so, given that he didn't

6   jump, I assumed he had already placed it there.

7            *THE DEFENDANT:*  Oh, yes, Your Honor.

8            *THE COURT:*  All right.  Have you reviewed the

9   Indictment prior to today?

10            *THE DEFENDANT:*  Yeah.

11            *THE COURT:*  Have you had an opportunity to discuss the

12   charge in the Indictment, the case in general, and any and all

13   possible defenses with Mr. O'Hara?

14            *THE DEFENDANT:*  Yes.

15            *THE COURT:*  All right.  Have you had enough time to go

16   over all of these matters with him?

17            *THE DEFENDANT:*  Yes.

18            *THE COURT:*  Are you fully satisfied with the counsel,

19   representation and advice given to you in this case, by him?

20            *THE DEFENDANT:*  Yes.

21            *THE COURT:*  In a moment I'm going to ask you how you

22   wish to plead to the Indictment, but before I do that, there

23   are two things I want to tell you.  Number one, you have a

24   right to have me read the charge to you, here, this morning,

25   and if you want me to, I will.  You can also tell me that you

1  don't need to have it read to you, because you have read it

2  before, you, in fact, have a copy in front of you right now.

3  Either way is fine with me.  It's your choice to make.  Do you

4  want me to read it to you or not?

5          THE DEFENDANT:  No, that's fine, Your Honor.

6          THE COURT:  All right.  The second thing I want to

7  tell you is this, you have an absolute right to enter a plea of

8  not guilty, just as you did before the magistrate judge,

9  whenever you were first brought before him or her.  And nothing

10  in these proceedings should be taken as any form of pressure on

11  you, by me, to get you to change your plea from not guilty to

12  guilty.  Do you understand?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Then, I ask, are you the Francisco Garcia

15  that is named in the Indictment?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And with respect to the charge, which is

18  Assault Resulting In Serious Bodily Injury, on or about

19  September 2, 2019, how do you wish to plead; guilty or not

20  guilty?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  Sir, before I can accept that plea, there

23  are a number of things I have to go over with you.  Those

24  things are, for the most part, covered in two documents; the

25  first document is Defendant's Plea Of Guilty And Statement Of

1    Facts Relevant To Sentencing Without A Plea Agreement, that's

2    been marked as Court Exhibit 1.  The second document is the

3    Statement By Defendant In Advance Of Plea Of Guilty; that's

4    marked as Court Exhibit 2.

5            Do you have a copy of each of those documents with you

6    at the podium?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Would you review them, and look to see

9    whether or not you signed them, and after you have examined the

10   document, tell me whether you have signed both of them?

11           THE DEFENDANT:  Yes.  I signed both of them.

12           THE COURT:  All right.  Now, let me just make

13   something clear on the record, this first document, this

14   Defendant's Plea Of Guilty And Statement Of Fact Relevant To

15   Sentencing Without A Plea Agreement, is a document that I

16   simply use to inform me as to where the parties have

17   disagreements, in case something that I should pay attention to

18   is flagged for me.

19           To be very, very clear, nothing in this document

20   creates any kind of an agreement between you and the

21   government, with respect to the resolution of this case or

22   sentencing.  Despite the paper, you are pleading without any

23   form of agreement or Plea Agreement or concession, whatsoever,

24   in this case.  Understood?

25           THE DEFENDANT:  Yes.

1          *THE COURT:*  All right.  Mr. O'Hara, did you sign each

2    of these documents, as well?

3          *MR. O'HARA:*  I did, Your Honor.

4          *THE COURT:*  And, Ms. Cramer-Babycz, did the government

5    sign the first of these, the Plea Of Guilty And Statement Of

6    Facts?

7          *MS. CRAMER-BABYCZ:*  Yes, Your Honor.

8          *THE COURT:*  All right.  And do you understand that the

9    simple check box of where you agree or disagree is not meant to

10   create some kind of agreement between government and the

11   defendant?

12         *MS. CRAMER-BABYCZ:*  Yes, Your Honor.

13         *THE COURT:*  All right.  Back to you, Mr. Garcia.  Did

14   you read these documents over before you signed them?

15         *THE DEFENDANT:*  Yes.

16         *THE COURT:*  Did you have the opportunity to review

17   them and discuss them with Mr. O'Hara before you signed them?

18         *THE DEFENDANT:*  Yes.

19         *THE COURT:*  Do you feel that you understand what they

20   say?

21         *THE DEFENDANT:*  Yes.

22         *THE COURT:*  Did you sign each document freely and

23   voluntarily?

24         *THE DEFENDANT:*  Yes.

25         *THE COURT:*  Has anyone made any promise to you, in

1    order to get you to plead guilty, that, obviously, is not

2    reflected in these documents?  And all that I mean by that is,

3    the documents show that there's no agreement, whatsoever.  I

4    want to make sure there's not some side deal or promise or

5    anything else, not reduced to paper, that has been made.  Has

6    any such promise been made to you?

7              THE DEFENDANT:  No.

8              THE COURT:  The next thing I want to ask is whether or

9    not anyone, whether it be -- and I am going to list names only

10   because they have been mentioned throughout the course of this

11   proceeding, the government, your lawyer, any -- the Bureau of

12   Prisons, U.S. Marshal Service, Mexican Mafia, Gulf Cartel,

13   Surenos or anybody else, threatened you, coerced you or

14   pressured you, in any way, in order to get you to plead guilty?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  I want to go over some things with you

17   that are covered in these documents in more detail.  Obviously,

18   there's no Plea Agreement with respect to the government; that

19   means that you have the right to take any position you wish to,

20   with respect to sentencing.  It also means that you can appeal

21   any aspect of sentencing that occurs, without restriction, but

22   I do want to be clear about one thing, it does mean that if you

23   persist in your plea of guilty, that ultimately any pretrial

24   motions that have been resolved against you, are resolved for

25   all time.  Understood?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Obviously, there is no

3    agreement, so there's nothing that is binding me, with regard

4    to sentencing, and should be no expectation, positive or

5    negative, about what I may or may not do.  Understood?

6          THE DEFENDANT:  Yes.

7          THE COURT:  I need to tell you what the maximum

8    penalties are, because the law requires that I do so.  In this

9    case, the maximum possible penalty is not more than 10-years

10   imprisonment, a fine of not more than $250,000, or both, not

11   more than three years of supervised release, and a $100 Special

12   Assessment Fee.  Do you understand?

13         THE DEFENDANT:  Yes.

14         THE COURT:  I want to tweak and talk about each --

15   some of these in a little detail.  In terms of the three years

16   of supervised release, you are currently serving a federal

17   sentence, I believe it's out of North Dakota?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And if supervised release was ordered in

20   that case, any supervised release that I impose in this case

21   would, by law, run together with it.  Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And what it would mean is that if you

24   were -- that when you were finished serving your sentence and

25   released, you would be subject to certain terms and conditions

1 imposed by the Court, and if you violated those conditions, you

2 could be brought back to Court, and if I found there to be a

3 violation, I could send you back to prison, even though you

4 finished the original sentence I gave you.  Understood?

5       *THE DEFENDANT:*  Yes.

6       *THE COURT:*  The next thing I want to tell you is that,

7 of course, any sentence I give you, can be made to run together

8 with or to follow the sentence that you are currently serving.

9 Do you understand?

10       *THE DEFENDANT:*  Yes.

11       *THE COURT:*  And then, finally, what I want to do is

12 also raise to you -- with you, the possibility, and I say it

13 that way for a reason, I will explain, momentarily, that the

14 sentence may also include restitution.  Normally, what happens

15 is that restitution is out of the pocket -- well, I shouldn't

16 say it that way.  Restitution are costs, expenses, damages

17 suffered and incurred by the victim, as a result of the

18 offense.  Often, in prison cases, because the medical expenses

19 are covered by the BOP, there doesn't end up being a

20 restitution order.  At this time, I don't know what the state

21 of anything is, and so I'm just raising, with you, there's the

22 possibility of a restitution order.  Do you understand?

23       *THE DEFENDANT:*  Yes.

24       *THE COURT:*  All right.  There's no parole in the

25 federal system.  You should know that you are required to do

1    all of the time that is -- is given, with the exception of a

2    certain limited number of days per year that the Bureau of

3    Prisons could credit you with for good behavior.  Understood?

4              *THE DEFENDANT:*  Yes.

5              *THE COURT:*  You understand that this is a felony, that

6    you are offering to plead guilty to?

7              *THE DEFENDANT:*  Yes.

8              *THE COURT:*  And that there are collateral

9    consequences; meaning, things happen, beyond anything I do.

10   Pleading guilty, being convicted of a felony, affects your

11   right to vote, sit on a jury, possess firearms, hold certain

12   jobs in the public or private sector.  It may also affect

13   eligibility for government programs or subsidized housing.

14   Understood?

15             *THE DEFENDANT:*  Yes.

16             *THE COURT:*  Now, I want you to take Court Exhibit 1,

17   of the Plea Of Guilty And Statement Of Facts, and flip over to

18   page two, and there what you are going to see, at the bottom of

19   page two and top of page three, is a statement of facts that

20   has been written by you -- that is not fair -- written by your

21   attorney.  Understood?

22             *THE DEFENDANT:*  Yes.

23             *THE COURT:*  And these -- these facts are presented to

24   me, in order for me to decide whether or not there are

25   sufficient facts to accept the plea of guilty.  Do you

1   understand?

2           *THE DEFENDANT:*  Yes.

3           *THE COURT:*  The government, obviously, has disagreed

4   with this Statement Of Facts.  I'm not here to resolve every

5   back-and-forth dispute that there may be.  I just want to make

6   sure that there is enough here so that the -- there's a factual

7   basis for the plea.  Understood?

8           *THE DEFENDANT:*  Yes.

9           *THE COURT:*  Do you admit these facts as set forth in

10  pages two and three?

11          *THE DEFENDANT:*  Yes.

12          *THE COURT:*  Do you admit that they are true, after

13  reviewing them and reviewing them with your lawyer?

14          *THE DEFENDANT:*  Yes.

15          *THE COURT:*  All right.  Now, there is one -- a couple

16  of little things that I just want to amplify for you, and what

17  I mean by that is that the very last thing that it says, here,

18  is that the -- the striking of Mr. Cardenas caused serious

19  bodily injury to him as defined in 18 U.S.C. 3565.  You don't

20  have that book in front of you, and I don't expect you, off the

21  street, to know what that means.  So let me read to you what

22  that means, just to make sure that there's not some

23  misunderstanding.  And what I'm doing is I'm referring to that

24  term, and all I'm doing it defining it, as it's defined in the

25  jury instructions, that are applicable in the Tenth Circuit.

1          Serious bodily injury means bodily injury which

2    involves a substantial risk of death or extreme physical pain

3    or protracted and obvious disfigurement or protracted loss or

4    impairment of the bodily member, organ or mental faculty.  Do

5    you understand?

6          *THE DEFENDANT:*  Yes.

7          *THE COURT:*  All right.  The next thing I want to cover

8    is that the statement says, *without justification* and again,

9    I'm not trying to slip anything past you, here.  I just want to

10   be as direct as possible.  Throughout the lead up to the trial,

11   which was to occur this morning, the position that your lawyer

12   was taking, with me, was that there was, at least, a

13   possibility of a self-defense, defense.  What I want to tell

14   you is where you admit to me that it is without justification,

15   what you are saying, among other things, is that there is no

16   self-defense instruction -- there is no self-defense, defense

17   that's applicable in this case.  If there were, the government

18   would be required to prove that you did not act in

19   self-defense, or that it was reasonable for you to think that

20   the force used was necessary to defend yourself against an

21   immediate threat from Mr. Cardenas.

22          Do you understand that that is the meaning of that

23   phrase?

24          *MR. O'HARA:*  Your Honor, may I have one moment, with

25   Mr. Garcia?

1          THE COURT:  You may.

2          MR. O'HARA:  Sure.

3          (Discussion off the record between Mr. O'Hara and his

4     client.)

5          MR. O'HARA:  Yes, Your Honor.  May I provide some, I

6     guess, form of clarification to this?

7          THE COURT:  We will see.

8          MR. O'HARA:  Just that the intent in this statement is

9     that at certain times there were punches or strikes that were

10    thrown that were not in self-defense.  It -- it's not meant to

11    include the entire incident.

12         THE COURT:  Look, I'm not trying to set forth facts

13    that -- and I hate the expression, blow-by-blow, but that, sort

14    of, fits the circumstances, here.  What I am saying is that as

15    part of the plea, and I am not trying to accept or get him to

16    say that he accepts the government's version of the facts or

17    any other version of the facts.  He has already offered a plea

18    to these facts, and I just want to clarify that the phrase

19    *without justification* means that he is giving up any

20    self-defense, defense, in connection with this case.

21         I'm not trying to establish how it started, who swung

22    first, how many times or anything else.  It's just, I'm not

23    going to allow it to go forward where he pleads guilty, and

24    then says, *But wait, I wasn't guilty, because I had a*

25    *self-defense, defense.*

1          *MR. O'HARA:*  Understood.

2          *THE COURT:*  That's all I'm trying to do.  Do you

3    understand what I just said, Mr. Garcia?

4          *THE DEFENDANT:*  Yes.  Yes, Your Honor.

5          *THE COURT:*  And then with that understanding, do you

6    understand that the term *without justification*, as used in this

7    document, means that you are foregoing or giving up any claim

8    that you have a self-defense, defense, to the charge of assault

9    resulting in serious bodily injury.

10         *THE DEFENDANT:*  Yes, Your Honor.

11         *THE COURT:*  All right.  Now, there's a section of this

12   document that's called the -- well, it describes the

13   guidelines, and I want to talk about that very briefly.

14   There's a group in Washington called the Sentencing Commission.

15   They make recommendations in every case as to what they think

16   is the right sentence.  They do it the -- in the most

17   complicated way possible.  They write this book, and you have

18   to use the rule of the book to figure out what it is they are

19   recommending.

20         The law says that I have to figure it out; calculate

21   it correctly, and consider it, that's all, but because I have

22   that obligation, in every case, where there's a plea, whether

23   it is with or without a Plea Agreement, I ask the parties to

24   give me their calculation.  It's simply information, from my

25   perspective.  It's not binding on you.

1       So, what I mean by that is this, it's possible that,

2  at some point in the future, maybe after -- at the sentencing

3  hearing, I see something, raise it or probation raises

4  something in the presentence report, that may cause you to

5  change your position, up or down, what I want you to understand

6  is what's in here, is by way of guideline calculations, is no

7  way binding on you and in no way binding on me, when it comes

8  to sentencing.  Understood?

9       *THE DEFENDANT:*  Yes.

10      *THE COURT:*  All right.  Even if it's correctly

11  calculated, and, you know, the government disagrees.  But I'm

12  not trying to weigh in on who is right and who is wrong, now.

13      Regardless of who I think is right or wrong, if

14  anyone, at sentencing, I'm not required to follow the

15  guidelines and can choose to sentence other than how they

16  recommend.  Do you understand?

17      *THE DEFENDANT:*  Yes.

18      *THE COURT:*  All right.  New topic, obviously, no one

19  needs to plead guilty to any offense.  You can, instead,

20  proceed to trial.  As you know, trial in this matter was set

21  for today.  If you were to go to trial and insist on a trial,

22  it would be before a jury of 12, and that jury would be the

23  ones who would decide whether you were guilty or not guilty of

24  the offense charged in the Indictment.  They would have to base

25  that decision solely on the evidence presented during the

1    course of the trial.  Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  They could not find you to be guilty

4    unless each and every single one of them agreed that the

5    evidence showed you to be guilty beyond a reasonable doubt.  Do

6    you understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  At trial you are not required to prove

9    that you are not guilty.  If you were to go to trial, you would

10   not be required to prove or disprove anything.  The government

11   would be required to prove guilt beyond a reasonable doubt, and

12   that would include, if you raised the defense of self-defense,

13   to prove, beyond a reasonable doubt, that self-defense was not

14   applicable, and if the government fails in either of those

15   regards, the jury must find you to be not guilty.  Do you

16   understand?

17             THE DEFENDANT:  Yes.

18             THE COURT:  I want you to go back to the first

19   document for just a minute, and I want you to flip over to --

20   well, it's right on page one.  There's something called

21   Elements Of The Offense, and it goes over to page two, and it

22   reads that the three elements are that you knowingly assaulted

23   another person; as a result, the victim sustained serious

24   bodily injury; and third, the assault occurred within the

25   special maritime and territorial jurisdiction of the United

1    States.  Do you see that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  I'm calling that to your attention for a

4    simple reason, if you were to go to trial, that's what the

5    government would have to prove, beyond a reasonable doubt, and

6    if the government failed to prove any one of those items, the

7    jury would have to find you to be not guilty.  Do you

8    understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Again, just to make clear, because I am

11   uncertain as to what extent you may or may not have seen these

12   jury instructions that were previously tendered, when it says

13   that you knowingly assaulted another person, you should take

14   that to mean that you intentionally struck Mr. Cardenas.  Do

15   you understand?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Okay.  At trial you would have the right

18   to the assistance of counsel; meaning, Mr. O'Hara, as well as

19   Mr. Belcher, would both be here with you, throughout the

20   entirety of the trial; witnesses would testify in front of you,

21   and your attorneys, with you, here, in the courtroom, so that

22   you could see and hear and understand the case against you.

23   Understood?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Your attorneys could Cross-examine or

1    question witnesses who testified against you, as well.

2    Understood?

3           *THE DEFENDANT:* Yes.

4           *THE COURT:* You could present witnesses and evidence

5    at this trial, as well, if that's what you wished to do.  Do

6    you understand?

7           *THE DEFENDANT:* Yes.

8           *THE COURT:* The way I describe it, it's kind of a

9    two-way street, each side gets the opportunity to travel on the

10    street; meaning, each side can, if they choose to, present

11    evidence, challenge the other side's evidence, challenge the

12    other side's testimony, by Cross-examining witnesses, arguing

13    to the jury in favor of their position and against the position

14    of the other side.  Do you understand?

15           *THE DEFENDANT:* Yes.

16           *THE COURT:* In terms of giving your side, or

17    presenting your side, if you are unable to pay for the costs of

18    a defense, whether that be attorney fees, expert fees or any

19    other type of fee, cost or expense, all of that would be paid

20    for you by the government.  Do you understand?

21           *THE DEFENDANT:* Yes.

22           *THE COURT:* But remember what I told you earlier, it

23    is the burden on the government to prove guilt, beyond a

24    reasonable doubt; that burden stays on the government,

25    regardless of whether or not you choose to put on a defense.

1    In more simple terms, even though you have the right to put on

2    a defense, putting on a defense does not change the burden of

3    proof or cause you to take on some obligation to prove that you

4    are not guilty.  Do you understand?

5              *THE DEFENDANT:*  Yes.

6              *THE COURT:*  At trial you have a special right that's

7    unlike that of anybody else at the trial.  No one can make you

8    testify.  You get to decide, and only you get to decide.  If

9    you want to testify, you can, and you can take the witness

10   stand, just like any other witness, and no one can stop you,

11   and if you don't want to testify, no one can make you, and you

12   can't even be called to the witness stand in front of the jury.

13   Do you understand?

14             *THE DEFENDANT:*  Yes.

15             *THE COURT:*  You wouldn't have to decide, now, whether

16   you would testify at this trial.  You wouldn't have to decide

17   until the middle of the trial, after you had seen and heard

18   what the evidence was against you.  That's the earliest point

19   at which you would have to make your decision.  Understood?

20             *THE DEFENDANT:*  Yes.

21             *THE COURT:*  If, for any reason, you decided that you

22   did not want to testify, the jury would be told that they can

23   not consider that fact, in any way.  They cannot even think

24   about it on the issue of guilt or draw any inference, at all,

25   from that fact.  Do you understand?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  If you were to go to trial and be

3     convicted, you would have the right to appeal the conviction,

4     as well as any sentence that was imposed on you, by me,

5     following that conviction.  Understood?

6          *THE DEFENDANT:*  Yes.

7          *THE COURT:*  If you could not afford an appeal, an

8     attorney would be appointed for you, at no cost to you, and any

9     and all costs associated with the appeal would be paid for you

10    by the government.  Do you understand?

11         *THE DEFENDANT:*  Yes.

12         *THE COURT:*  If you persist in a plea of guilty, the

13    trial does not happen.  There's no trial because, by pleading

14    guilty, you waive; that is, give up the right to go to trial,

15    as well as all of the rights that go along with a trial.

16    Understood?

17         *THE DEFENDANT:*  Yes.

18         *THE COURT:*  There will be no further exploration or

19    examination of the issue of guilt if you proceed.  Do you

20    understand?

21         *THE DEFENDANT:*  Yes.

22         *THE COURT:*  Sir, is there anything, at all, about --

23    well, and as to the issue of guilt, I suppose I should say,

24    that pleading guilty means that you have accepted that, and

25    that it is highly unlikely that any appellate court would

1    simply permit you to change your mind.

2          In other words, if you are pleading guilty, you are

3    pleading guilty now and for all time.  Understood?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Sir, is there anything, at

6    all, about a trial that you don't understand or want to ask me

7    about?

8          THE DEFENDANT:  No.

9          THE COURT:  I sum it up like this, choosing to go to

10   trial is turning to the government and saying to them about the

11   charges that they filed, *Hey prove it, beyond a reasonable*

12   *doubt*.  Pleading guilty is saying something very different,

13   it's saying, *You don't have to prove it, because I admit it*.

14   Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  I have now covered everything that I feel

17   I need to.  Have you understood everything we've talked about,

18   here, today?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Is there anything, at all, whether I have

21   brought it up or not, that you want to ask me about?

22         THE DEFENDANT:  No.

23         THE COURT:  We're at the end of this hearing; this

24   will be the final time I ask; do you still want to plead

25   guilty?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  Are you doing so of your own free will?

3          *THE DEFENDANT:*  Yes.

4          *THE COURT:*  Are you, in fact, guilty?

5          *THE DEFENDANT:*  Yes.

6          *THE COURT:*  Mr. O'Hara, do you know of any reason I

7    should not permit Mr. Garcia to plead?

8          *MR. O'HARA:*  No, I do not, Your Honor.

9          *THE COURT:*  Ms. Cramer-Babycz, do you?

10          *MS. CRAMER-BABYCZ:*  No, Your Honor.

11          *THE COURT:*  While I have you both of the focus of my

12    attention, is there any further advisement that you feel is

13    necessary, Mr. O'Hara?

14          *MR. O'HARA:*  No further advisement.

15          *THE COURT:*  Government?

16          *MS. CRAMER-BABYCZ:*  No.

17          *THE COURT:*  All right.  The executed documents are

18    admitted for purposes of this hearing, based on those

19    documents, my observations of the defendant, the statements of

20    counsel and the record developed here today, it is the finding

21    of the Court, in the case of the United States versus

22    Francisco Garcia; that the defendant is fully competent and

23    capable of entering an informed plea; that he is aware of the

24    nature of the charges and the consequences of the plea; that he

25    has had the benefit of competent counsel; and that the plea of

1    guilty is a knowing and voluntary one, which is supported by an

2    independent basis in fact, which contains each of the essential

3    elements of the offense.

4           The plea is therefore accepted, the defendant is now

5    adjudged guilty of that offense.  There is nothing for later

6    determination, in that there's no Plea Agreement to accept or

7    reject.

8           The plea, itself, is now accepted.  If there are any

9    pending motions, and I don't believe there are, but if there

10   are any, they are denied as moot.  Sentencing is set for

11   August 19, at 1 o'clock.

12          Mr. Garcia, between now and then, someone from the

13   probation office is going to contact you.  They write a report

14   about you, similar to what I assume was done in North Dakota.

15   They interview you, they write a report about you, that report

16   gets given to the Court, and I look at it and consider that,

17   among other things, in trying to decide what is the appropriate

18   sentence.

19          Mr. O'Hara can be present, when they communicate with

20   you.  I cannot, at this time, say whether that will be in

21   person or by video or by telephone, but, regardless of the form

22   of contact, he can be present.  If there is -- it is also the

23   case that after the report is -- after draft of the report is

24   completed, you will see it before it is finalized, and have an

25   opportunity to review it and to suggest changes, corrections or

1   additions.

2           Regardless of whether there are any such changes,

3   corrections or additions, I will give you an opportunity to

4   speak directly to me, at sentencing, if you wish to do so.

5           In connection with the preparation of the report, I

6   order that any information, release, data or other material,

7   provided to the probation office, by the defendant, shall be

8   used by the probation office only for the preparation of the

9   report and for no other purpose.

10           The defendant is -- he is not on bond.  He is a BOP

11   inmate.  He is remanded to the Marshal's custody for holding to

12   be returned to Court for sentencing, in this matter.  Is there

13   anything else by way of the --

14           *MS. CRAMER-BABYCZ:*  Not from the government.  Thank

15   you.

16           *MR. O'HARA:*  Nothing else, Your Honor.  Thank you.

17           *THE COURT:*  All right.  And just to be clear, it would

18   be helpful to the probation office, I believe, and helpful to

19   me, in any event, if the government has a factual recitation

20   that it believes is the appropriate one, to give it to the

21   probation office, in advance of the presentence report.

22           The only reason I say that is I will then have the

23   competing descriptions available to me, and consider them,

24   rather than having to knee-jerk respond, at the time of

25   sentencing.

1          Obviously, Mr. O'Hara, you know that you have the

2    right to challenge that, and that nothing that has occurred

3    here constitutes an agreement or acceptance of those facts by

4    Mr. Garcia.  Understood?

5          MR. O'HARA:  Understood, Your Honor.

6          THE COURT:  All right.  My final comment is a

7    lighthearted and facetious one, sorry you got your trial

8    haircut for no reason.  We will be in recess.

9          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

10         (Recess at 10:35 a.m.)

11                     REPORTER'S CERTIFICATE

12

13         I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

14

15         Dated at Denver, Colorado, this 4th day of January, 2023.

16                          s/Tammy Hoffschildt

17                     _____

18                     Tammy Hoffschildt, FCRR,RMR,CRR

19

20

21

22

23

24

25